UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 1:18-cr-00237-DCN |
| Plaintiff, | **MEMORANDUM DECISION AND** |
| v. | **ORDER** |
| JERRY LYNN MOORE, | |
| Defendant. | |

## I. INTRODUCTION

Before the Court is Defendant Jerry Lynn Moore's Motion for Sentence Reduction pursuant to 18 U.S.C. § 3582(c)(1)(A). Dkt. 25. The Government filed a Response, opposing Moore's Motion. Dkt. 27. Moore filed a reply thereafter. Dkt. 32.[1] The matter is ripe for the Court's consideration.

Having reviewed the record and briefs, the Court finds the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motion without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B).[2] Upon review, and for the reasons set forth below, the Court DENIES the Motion.

---

[1] Moore drafted the initial motion pro se. Dkt. 25. Then, in its discretion, the Court appointed Moore Counsel for the limited purpose of filing a reply brief. Dkt. 29.

[2] Although this is a criminal case, the local civil rule regarding hearings applies as there is no corresponding criminal rule. *See* Dist. Idaho Loc. Crim. R. 1.1(f) (explaining that "all general provisions of the Local Rules of Civil Practice apply to criminal proceedings unless such provisions are in conflict with or are

## II. BACKGROUND

### A. Factual Background

In 2017, Moore reportedly uploaded an image of child pornography to an internet forum. An investigator promptly met with Moore at Moore's residence to discuss the upload. During their discussion, Moore agreed to allow the investigator to search his electronic devices. However, shortly thereafter, Moore dropped his cell phone into the toilet and flushed it, in an apparent attempt to destroy evidence. As a result, the phone was too damaged to allow for investigation, and none of Moore's other electronic devices revealed any contraband.

Roughly four months later, Moore posted an ad on Craigslist, stating, "Daddy needs crack whores." Dkt. 16, at 4. An undercover agent responded to the ad, identifying himself as a fifteen-year-old girl named Emily. Moore and the agent—responding as Emily—engaged in sexually explicit dialogue over the next several weeks. Multiple times, Moore expressed his desire to impregnate Emily. The two also discussed sexually abusing Emily's younger sister. Moore sent the agent multiple pornographic images of himself and requested that Emily respond in kind.

On March 18, 2018, Moore agreed to meet with Emily to engage in sexual acts. Upon arrival at the meeting location, Moore was taken into custody. While in custody, investigators examined Moore's cell phone and found messages between Moore and another individual discussing traveling to foreign countries to have sex with, and kill,

---

otherwise provided for by the Federal Rules of Criminal Procedure or the Local Rules of Criminal Practice").

children and infants.

In an interview after his arrest, Moore admitted to attempting to meet up with Emily to have sex. In response to questioning about his messages discussing the sexual abuse of infants, he said "I'm sure it trips peoples trigger, but there are a lot of people into that." *Id.* He stated further that he believes its ok for young girls to engage in sexual activity so long as they are "developed," and their "hips can handle it." *Id.*

On November 19, 2018, Moore pleaded guilty to attempted sexual exploitation of a child and was sentenced to 180 months in federal prison, followed by 120 months of supervised release. Dkt. 22. His projected release date is March 20, 2031.

There is no dispute that Moore suffers from various significant medical conditions. Records from the Bureau of Prisons (the "BOP") indicate that he has been diagnosed with Usher's Syndrome (a genetic disorder that causes vision loss and hearing loss), cataracts, obesity, anemia, hyperlipidemia, hypertension, acute embolism and thrombosis of vein, unspecified cirrhosis of the liver, and gastro-esophageal reflux disease. He has been prescribed multiple medications to help him manage his conditions. Moore is also legally blind. To accommodate Moore's blindness, the BOP has given him a lower bunk, medical shoes, a cane, hearing aids, and high-magnifying reading glasses. The BOP is also in the process of arranging cataract surgery for Moore.

In November 2022, while in the BOP's custody, Moore began to vomit blood and to bleed from his anus. He was taken to the hospital where it was discovered that the veins in his esophagus were enlarged and bleeding and that he had a blood clot in his liver—both likely complications related to his liver cirrhosis. These issues were successfully treated,

and Moore was ultimately discharged with new prescriptions. In March 2023, Moore had a brief episode involving cellulitis in his leg. However, he received further treatment and the issue resolved shortly thereafter.

### B. Procedural Background

On March 11, 2022, Moore submitted a request for compassionate release to the warden of his facility. Dkt. 27-1, at 1. Moore's request was based on symptoms related to his Usher's Syndrome. The warden denied Moore's request, stating that Moore was not debilitated, nor did he lack the capacity necessary to go about his daily life. *Id*. at 2. Approximately one year later, Moore filed the instant Motion for Compassionate Release. Dkt. 25.

## III. LEGAL STANDARD

Moore seeks compassionate release under the First Step Act ("FSA"), amended 18 U.S.C. § 3582(c)(1)(A), which allows a court to modify a sentence under certain circumstances. In order to grant compassionate release, a district court must, as a threshold matter, determine whether a defendant has exhausted his or her administrative remedies. *Id*. Next, a district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction," and the reduction is "consistent with applicable policy statements" issued by the U.S. Sentencing Commission.[3] 18 U.S.C. §

---

[3] Congress did not define what constitutes "extraordinary and compelling" reasons; instead, it deferred consideration of the matter to the Sentencing Commission. *United States v. Rodriguez*, 424 F. Supp. 3d 674, 681 (N.D. Cal. 2019) (citing 18 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of Title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples.").

3582(c)(1)(A). If the latter criteria are met, the district court must then consider the sentencing factors set forth in 18 U.S.C. § 3553(a) to the extent they are applicable. *Id.*; *Rodriguez*, 424 F. Supp. 3d at 680.

The policy statements at U.S.S.G. § 1B1.13 establish that "extraordinary and compelling reasons" include: (1) a defendant's medical circumstances; (2) a defendant's age combined with his or her experiencing serious deterioration in physical or mental health due to the aging process; (3) a defendant's family circumstances where the defendant becomes the only available caregiver for a close relative; (4) a defendant's suffering abuse by an employee or contractor of the BOP; (5) a defendant's subjection to an unusually long sentence where the defendant has already served at least ten years of the sentence; or (6) any other circumstance or combination of circumstances of similar gravity. *Id.* at § 1B1.13(b). The statements also assert that, before a sentence may be reduced, the Court must find that the defendant is not a danger to the safety of any other person or to the community. *Id.* at § 1B1.13(a)(2).

Until recent amendments, U.S.S.G. § 1B1.13 addressed only motions brought by the Director of the BOP—and not those brought by defendants individually. *See United States v. Aruda*, 993 F.3d 797, 801–02 (9th Cir. 2021). To be sure, district courts were free to consult the statements as persuasive authority, but the Ninth Circuit made clear that the statements were not binding. *Id.* at 802. However, under recent amendments, U.S.S.G. § 1B1.13 expressly applies to motions brought by the BOP Director *and* to those brought by individual defendants. U.S.S.G. § 1B1.13(a). Along with its sister district courts in the Ninth Circuit, the Court understands these amendments to resolve the discrepancy

highlighted in *Aruda* and to make U.S.S.G § 1B1.13 binding. *See United States v. Brugnara*, 2024 WL 332867, at *2 (N.D. Cal. Jan. 28, 2024); *United States v. Garcia Nava*, 2024 WL 221439, at *2 (S.D. Cal. Jan. 19, 2024); *United States v. Cunningham*, 2024 WL 50908 (D. Mont. Jan. 4, 2024); *United States v. Brown*, 2023 WL 8650290, at *3 (W.D. Wash. Dec. 14, 2023)

In any event, the catch-all clause at U.S.S.G. § 1B1.13(b)(5) affords the Court significant leeway in defining precisely what qualifies as an extraordinary and compelling justification for a sentence reduction.

## IV. ANALYSIS

### A. Exhaustion of Administrative Remedies

Under 18 U.S.C. § 3582(c)(1)(A), a defendant may move the Court for a reduction in sentence only after he has "fully exhausted all administrative rights to appeal a failure of the BOP to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." Here, Moore filed a request with the warden, then waited beyond the requisite thirty days to file the instant Motion. *See* 18 U.S.C. § 3582(c)(1)(A). Accordingly, the Court finds that he has satisfied the statutory exhaustion requirements.

### B. Extraordinary and Compelling Reasons

As noted above, U.S.S.G. § 1B1.13(b) states that a defendant's medical circumstances may justify a reduction in sentence. The policy statements expound on what kind of medical circumstances qualify. *Id.* at § 1B1.13(b)(1). Relevant to Moore's Motion, the statements allow for a reduction where: (1) the defendant suffers from a terminal

illness; (2) the defendant suffers from a serious condition, functional or cognitive impairment, or is experiencing deteriorating physical or mental health due to the aging process that substantially diminishes his or her ability to provide self-care while in BOP custody, and the defendant is not anticipated to recover; or (3) the defendant suffers from a medical condition that requires long-term or specialized care that is not being provided by BOP and without which the defendant is at risk of serious deterioration in health or death. *Id.* at § 1B1.13(b)(1)(A)–(C).

Moore asserts that his loss of hearing and vision, along with his liver cirrhosis are "debilitating and terminal conditions," that warrant compassionate release. Dkt. 25, at 5. In support of his contention, Moore cites to notes from two vision specialists, one who stated that, due to the deterioration of his vision, compassionate release should be considered, Dkt. 25-1, at 3, and another who simply noted that she discussed compassionate release with Moore. Dkt. 25-1, at 4. He also claims that his liver cirrhosis limits his life expectancy and constitutes a terminal illness.

### 1. Usher's Syndrome

The Court begins with an analysis of Moore's Usher's Syndrome. While certainly serious, and worthy of conscientious care, Usher's Syndrome is not terminal. The question of whether Moore's Usher's Syndrome has substantially diminished his ability to provide self-care is a closer one. However, the Court finds that Moore has not carried his burden of showing that his self-care capacity is substantially diminished. *See United States v. Wright*, 46 F.4th 938, 951 (9th Cir. 2022) (stating that the movant bears the burden of establishing fitness for compassionate release). On the contrary, the record indicates that, with the help

of some accommodations, Moore is currently able to meet his personal needs. The record also indicates that, while Usher's Syndrome requires long-term, specialized care, Moore is receiving that care in the custody of the BOP. He has been provided with medical shoes, a cane, hearing aids, and high-magnifying glasses. Dkt. 27, at 5. He has seen vision specialists on multiple occasions. Dkt. 25-1, at 2–4. At the time of briefing, the BOP was in the process of scheduling a cataract surgery on Moore's behalf. Dkt. 27, at 5. All of these facts weigh against a finding that Moore's medical conditions warrant compassionate release.

Moore, through counsel, cites to multiple cases in which courts have granted a sentence reduction because a party's worsening vision constituted an extraordinary and compelling reason for release. *See, e.g., United States v. Westwolf*, 2023 WL 3305102 (D. Mont. May 8, 2023); *United States v. Lindell*, 517 F. Supp. 3d 1141 (D. Haw. 2021); *United States v. Derentz*, 608 F. Supp 3d 189 (E.D. Penn. 2022). However, none of those cases contain facts similar enough to those here to be persuasive.

In *Westwolf*, the court spent the vast majority of its analysis explaining its decision to *deny* Westwolf release. 2023 WL 3305102, at *3. Only in one brief paragraph at the end of the decision did the court reduce his sentence—from sixty months to fifty-six months. *Id.* at *4. And its discussion there was not detailed enough to be of use to Moore.

In *Lindell*, the court released a seventy-three-year-old man from custody because his vision was failing. 517 F. Supp. 3d at 1141. However, there, the record contained substantial evidence that the BOP was failing to provide adequate treatment to Lindell, that such failure was causing Lindell's vision to worsen, and that Lindell's ability to care for

himself was substantially compromised. *Id.* at 1147–49. No such evidence is present here. Moreover, the crime for which Lindell was imprisoned "involved sophisticated financial instruments and bookkeeping." *Id.* at 1150. Given the state of his vision, his age, and the imprisonment of Lindell's partner-in-crime, the court was not concerned that Lindell would reoffend. Here, as will be discussed in greater detail below, Moore would face significantly fewer barriers to re-offense if released.

Finally, in *Derentz*, the court released a man with offenses reasonably similar to Moore's because of his deteriorating vision. 608 F. Supp. 3d at 189. However, there the court again pointed to significant lapses in the medical treatment provided by the BOP. *Id.* at 195 ("[T]he BOP's repeated delays in arranging for care to protect Derentz's vision constitute an extraordinary and compelling reason for release."). Similar lapses in treatment have not been proven here. The court in *Derentz* also noted that Derentz had engaged in continuing-education courses while incarcerated, and that his conduct suggested contrition and a desire for self-improvement. *Id.* Moore's conduct while incarcerated has not been quite as exemplary. *See* Dkt. 27, at 4 (outlining various violations).

Thus, the Court finds that, while undoubtedly difficult, and worthy of continued monitoring and treatment, Moore's Usher's Syndrome does not constitute an extraordinary and compelling reason to reduce his sentence, at least not as it currently manifests.

### 2. Liver Cirrhosis

The Court turns next to whether Moore's liver cirrhosis constitutes an extraordinary and compelling reason to reduce his sentence. Moore asserts that his cirrhosis is terminal and that his life expectancy is no longer than five years. Dkt. 25, at 5. However, Moore

does not support either of these claims with any professional, medical opinion. Rather, support for this assertion comes from an "acquaintance" of Moore's who apparently told him that liver clots can limit one's life expectancy. Dkt. 27, Ex. B, MOORE_000457[4]. To even consider granting Moore a sentence reduction based on a terminal illness, the Court would need confirmation from a source more authoritative than Moore's unknown acquaintance.

Further, there is no indication Moore's cirrhosis is preventing him from taking care of himself, or that the BOP is not providing him with adequate support in managing his cirrhosis. Moore has had, and it appears that he will continue to have, regular contact with a gastroenterologist who can monitor his symptoms and ensure he receives all necessary treatment. Dkt. 25-1, at 22–23. As noted above, Moore's cirrhosis has contributed to at least one serious health incident while in the BOP's custody. Dkt. 27, at 6–7. But the record also indicates that the BOP responded promptly to that incident, and that Moore's issues have been adequately resolved. *Id.* Like Usher's Syndrome, cirrhosis is a serious, chronic condition. But "[c]hronic conditions that can be managed in prison are not a sufficient basis for compassionate release." *United States v. Luck*, 2020 WL 3050762, *2 (N.D. Cal. June 8, 2020). From the record, it appears that Moore's cirrhosis can currently be managed in prison.

### 3. Summary

In conclusion, neither the complications from Moore's Usher's Syndrome, nor his

---

[4] This exhibit is a flash drive and is on file physically in the Pocatello Courthouse.

cirrhosis presently qualify as extraordinary and compelling justifications for a reduction in his sentence. Thus, Moore's Motion is DENIED.

### C. Danger to Individuals or the Community

Even if the Court were to find that Moore's medical conditions currently constitute extraordinary and compelling medical circumstances under U.S.S.G. § 1B1.13(b)(1), the Court is *not* convinced Moore is no longer a danger to individuals or the community at large. *See id.* at § 1B1.13(a)(2).

Moore asserts, flatly, that his health conditions will prevent him from "engaging in repeat culpable conduct." Dkt. 32, at 11. The Court acknowledges that Moore is legally blind and has experienced a recent uptick in problems with his liver. Nevertheless, it is undisputed that Moore retains at least some measure of residual visual capacity. *See, e.g.*, Dkt. 27, at 7–9. With that capacity, it is not unfeasible that, upon release, Moore could return to propositioning young girls for sex. It would take only a phone or a computer— perhaps even less if his public access to young girls is not limited. Unlike the defendant in *Lindell*, Moore's medical issues make him no less capable of reverting to the conduct that led to his incarceration. This concern is supported by the fact that Moore suffered from Usher's Syndrome *at the time of his initial offense*. That his symptoms may have worsened in the interim, or that they are now accompanied by liver complications, does not mean Moore has been rendered incapable of misconduct. Moore's circumstances also differ markedly from those in *Derentz*. Unlike Derentz, Moore has not shown any desire to change his ways or to seek help, and his release plan does not indicate that he will have a strong support system upon release.

Accordingly, the Court finds that Moore still presents a danger to the community. Thus, he does not qualify for a sentence reduction.

**D. 3553(a) Sentencing Factors**

Finally, Moore has also failed to show that the factors listed in 18 U.S.C. § 3553(a) weigh in favor of a sentence reduction. Under § 3553(a), a sentence must, among other things, reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and be similar to the sentences of similarly situated defendants.

Moore claims that his continued incarceration does not reflect the seriousness of his offense, promote respect for the law, or provide just punishment because he has already accepted responsibility for his crime by pleading guilty. Dkt. 32, at 11. Frankly, the Court does not follow his logic. The fact that an individual opts to plead guilty does not, on its own, accomplish any of the goals of § 3553(a). Thus, this argument falls flat. Moore's other, peripheral attempts to argue that § 3553(a) supports his release ring similarly hollow.

Simply put, Moore chose to engage in rather odious conduct, for which he has been sentenced to fifteen years in prison. He has served less than half of that sentence. He has shown little, if any, remorse outside of choosing to plead guilty—a choice often motivated as much by self-interest as by contrition. And his behavior in prison has been problematic at best. *See* Dkt. 27-2, at 1–5. To qualify for a sentence reduction, Moore would need to convince the Court that, despite the foregoing, the aims in sending Moore to prison have been accomplished. He has not done so. Thus, even if other considerations weighed in

Moore's favor, because he has not shown that the § 3553(a) factors support a sentence reduction, the Court would still decline to grant him compassionate release.

## V. CONCLUSION

In sum, the Court finds that Moore has exhausted his administrative remedies. However, he has failed to show that: (1) extraordinary and compelling circumstances justify his release; (2) he does not present a danger to the community upon release; and (3) a reduction in his sentence is consistent with the goals of the 18 U.S.C. § 3553(a) sentencing factors. Therefore, the Court cannot depart from its prior sentence and release Moore at this time. Accordingly, the Court DENIES Moore's Motion.

## VI. ORDER

The Court HEREBY ORDERS:

1.   Moore's Motion for Compassionate Release (Dkt. 25) is DENIED.

DATED: February 8, 2024

David C. Nye
Chief U.S. District Court Judge