UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　Plaintiff,<br>v.<br><br>JERRY LYNN MOORE,<br><br>　　Defendant. | Case No. 1:18-cr-000237-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

# I. INTRODUCTION

Before the Court is Defendant Jerry Moore's Motion for Compassionate Release. Dkt. 34. The Government opposes the Motion. Dkt. 37.

Having reviewed the record and briefs, the Court finds the facts and legal arguments are adequately presented. Accordingly, the Court will decide the Motion without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B).[1] Upon review, and for the reasons set forth below, the Court DENIES Moore's Motion.

# II. BACKGROUND

**A. Factual Background**

In 2017, Moore reportedly uploaded an image of child pornography to an online messaging forum. Investigators met with Moore at his residence to discuss the upload. Moore consented to a search of his electronic devices, but after signing the consent form,

---

[1] Although this is a criminal case, the local civil rule regarding hearings applies as there is no corresponding criminal rule. *See* Dist. Idaho Loc. Crim. R. 1.1(f) (explaining that "all general provisions of the Local Rules of Civil Practice apply to criminal proceedings unless such provisions are in conflict with or are otherwise provided for by the Federal Rules of Criminal Procedure or the Local Rules of Criminal Practice").

MEMORANDUM DECISION AND ORDER - 1

went to the bathroom and dropped his cell phone into his toilet in an apparent attempt to destroy evidence. Moore's plan worked and law enforcement officers were unable to examine the cell phone.

A few months later, Moore posted an ad on Craigslist, stating, "Daddy needs crack whores." Dkt. 16, at 4. An undercover agent responded to the ad, identifying himself as a fifteen-year-old girl named Emily. For several weeks, Moore and the agent—responding as Emily—engaged in sexually explicit dialogue. Multiple times, Moore expressed his desire to have sex with, and impregnate, Emily. The two also discussed sexually abusing Emily's younger sister. Moore sent the agent multiple pornographic images of himself and requested that Emily respond in kind.

In March of 2018, Moore arranged to meet with Emily to engage in sexual acts. Upon arrival at the meeting location, Moore was taken into custody by law enforcement. As part of the investigation, Moore's cellphone was examined and law enforcement located text messages where Moore discussed traveling to foreign countries to have sex with, and kill, minor children, including infants.

On July 27, 2018, Moore was charged by criminal Information with one count of Attempted Sexual Exploitation of Children in violation of 18 U.S.C. § 2251(a). Dkt. 1.

In an interview after his arrest, Moore admitted to attempting to meet with Emily to have sex. In response to questioning about his messages regarding the sexual abuse of infants, Moore said "I'm sure it trips people's trigger, but there are a lot of people into that." Dkt. 16, at 4. He further stated that he believed it is ok for girls as young as twelve to engage in sexual activity so long as they consent, are "developed," and their "hips can

handle it." *Id.*

Moore eventually pleaded guilty (Dkt. 8) and, on November 18, 2018, the Court sentenced Moore to 180 months imprisonment to be followed by 120 months of supervised release (Dkt. 22). Moore is currently housed at the Federal Medical Center in Rochester, Minnesota, and has a projected release date of March 20, 2031.

## B. Procedural Background

On March 11, 2022, Moore submitted a request for compassionate release to the Warden of his facility. Dkt. 27-1, at 1. Moore's request was based on symptoms related to his Usher's Syndrome. The Warden denied Moore's request, stating that Moore was not debilitated, nor did he lack the capacity necessary to go about his daily life. *Id.* at 2. Approximately one year later, Moore filed a Motion for Compassionate Release with the Court. Dkt. 25. In a detailed thirteen-page decision, the Court analyzed Moore's medical conditions and explained why it would not grant him release at that time. Dkt. 33.

In the fall of 2024, Moore again petitioned the Warden for compassionate release. Moore highlighted his medical conditions—including a new diagnosis of cancer—and asked for an early release. On November 8, 2024, the Warden denied Moore's request. Dkt. 34-4, at 4–5.

On December 31, 2024, Moore filed the instant Motion for Compassionate release with the Court. Dkt. 34. The Court set a briefing schedule (Dkt. 35) and the Government responded in objection (Dkt. 37). Moore did not reply, and the matter is ripe for review.

### III. LEGAL STANDARD

Moore seeks compassionate release under the First Step Act ("FSA"), amended 18

MEMORANDUM DECISION AND ORDER - 3

U.S.C. § 3582(c)(1)(A), which allows a court to modify a sentence under certain circumstances. In order to grant compassionate release, a district court must, as a threshold matter, determine whether a defendant has exhausted his or her administrative remedies. *Id*. Next, a district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction," and the reduction is "consistent with applicable policy statements" issued by the U.S. Sentencing Commission.[2] *Id*. If the latter criteria are met, the district court must then consider the sentencing factors set forth in 18 U.S.C. § 3553(a) to the extent they are applicable. *Id*.; *United States v. Rodriguez*, 424 F. Supp. 3d 674, 680 (N.D. Cal. 2019).

The Sentencing Commission's policy statements at U.S.S.G. § 1B1.13 state that "extraordinary and compelling reasons" include: (1) a defendant's serious medical condition; (2) a defendant's age combined with serious deterioration in physical or mental health due to the aging process; (3) a defendant's family circumstances where the defendant becomes the only available caregiver for a close relative; (4) a defendant's suffering abuse by an employee or contractor of the Bureau of Prisons (the "BOP"); (5) the defendant's subjection to an unusually long sentence where the defendant has already served at least ten years of the sentence; or (6) any other circumstance or combination of circumstances of similar gravity. *Id.* at § 1B1.13(b). The statements also assert that, before a sentence may

---

[2] Congress did not define what constitutes "extraordinary and compelling" reasons; instead, it deferred consideration of the matter to the Sentencing Commission. *Rodriguez*, 424 F. Supp. 3d at 681 (citing 18 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of Title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples.").

MEMORANDUM DECISION AND ORDER - 4

be reduced, the Court must find the defendant is not a danger to the safety of any other person or to the community. *Id.* at § 1B1.13(a)(2).

Until recent amendments, U.S.S.G. § 1B1.13 addressed only motions brought by the Director of the BOP—and not those brought by defendants their own behalf. *See United States v. Aruda*, 993 F.3d 797, 801–02 (9th Cir. 2021). To be sure, district courts were free to consult the policy statements as persuasive authority, but the Ninth Circuit made clear that the statements were not binding. *Id.* at 802. However, under recent amendments, U.S.S.G. § 1B1.13 expressly applies to motions brought by the BOP Director *and* to those brought by individual defendants. U.S.S.G. § 1B1.13(a). Along with its sister district courts in the Ninth Circuit, the Court understands these amendments to resolve the discrepancy highlighted in *Aruda* and to make U.S.S.G § 1B1.13 binding. *See United States v. Brugnara*, 2024 WL 332867, at *2 (N.D. Cal. Jan. 28, 2024); *United States v. Garcia Nava*, 2024 WL 221439, at *2 (S.D. Cal. Jan. 19, 2024); *United States v. Cunningham*, 2024 WL 50908 (D. Mont. Jan. 4, 2024); *United States v. Brown*, 2023 WL 8650290, at *3 (W.D. Wash. Dec. 14, 2023).

In any event, the catch-all clause at U.S.S.G. § 1B1.13(b)(5) affords the Court significant leeway in defining precisely what qualifies as an extraordinary and compelling reason to warrant a reduction in sentence.

### IV. DISCUSSION

#### A. Exhaustion of Administrative Remedies

The FSA allows a motion for modification to be made by either the Director of the

BOP, or by a defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A).

As part of his current Motion, Moore did not include a copy of his request to the Warden of his facility, but he did include the Warden's response denying his request. Dkt. 34-4, at 4–5. Insofar as 30 days elapsed between his filing with the Warden and his instant Motion, exhaustion is satisfied. The Court will proceed to the next stage of its inquiry.

**B. Extraordinary and Compelling Reasons**

The Court must next consider whether "extraordinary and compelling reasons" warrant a permanent reduction in Moore's sentence, and whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(ii). Moore bears the burden of establishing that extraordinary and compelling reasons exist to justify compassionate release. *United States v. Holden*, 452 F. Supp. 3d 964, 969 (D. Or. Apr. 6, 2020).

The Court reviewed Moore's various medical conditions in depth in its prior decision. *See generally* Dkt. 33, at 6–11. The Court recognized that Moore is "legally blind" and suffers from other serious health ailments. *Id*. However, the Court found that the BOP was adequately monitoring and treating Moore's health conditions. *Id*. at 10. The Court also noted that the sentencing factors weighed against Moore's release at that time. *Id*. at 11–13.

In his recent motion, Moore explains that, since his prior filing, he has been

MEMORANDUM DECISION AND ORDER - 6

diagnosed with Chronic Myeloid leukemia—a form of cancer. He alleges this cancer is terminal and thus justifies his release under the medical prong of the compassionate release standard.[3]

The Court begins by expressing its sympathies to Moore. Facing cancer is difficult and anxiety-inducing, particularly when in prison.

That said, the type of cancer Moore has been diagnosed with is a non-terminal cancer that is rarely fatal when treated.[4] The problem: Moore is refusing treatment.

In denying his request for release, the Warden at FMC Rochester noted that Moore's condition was "not considered to be terminal at [that] time." Dkt. 34-4, at 4. He also noted that Moore was "not fully compliant with all treatments for [his] medical condition." *Id*. The Warden emphasized, however, that Moore could renew his request if his condition worsened. *Id*.

---

[3] The following medical conditions can constitute extraordinary and compelling reasons justifying compassionate release:

> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory); or
>
> (ii) The defendant is—
>
> (I) suffering from a serious physical or medical condition,
>
> (II) suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

§ 1B1.13, application note 1(A).

[4] Chronic Myeloid leukemia (CML) | Leukemia and Lymphoma Society. (n.d.) at https://www.lls.org/research/chronic-myeloid-leukemia-cml

MEMORANDUM DECISION AND ORDER - 7

The documents Moore submitted on his own behalf confirm the Warden's observations. After an appointment on May 2, 2024, Moore's cancer doctor noted that he "spent 40 minutes with Mr. Moore compassionately requesting him to restart CML directed therapy. At this time point, he has refused to do so." *Id*. at 7. Moore apparently had decided to let "nature [] take its course." *Id*.

After a follow-up visit on October 2, 2024, another doctor noted that Moore had explained he "doesn't want to take any psychiatric medications for pain and has not filled his duloxetine as well as other medication. He again confirms that he does not want treatment for his [cancer]." *Id*. at 8.

Thus, not only is Moore's cancer not likely terminal, but he is, by his own choices, making his situation worse. To be sure, Moore's choice to ignore medical advice does not undo the seriousness of his underlying condition. But a defendant who willingly worsens his medical condition by refusing practical, available, and free treatment does not provide a "compelling" medical circumstance to justify compassionate release.

Ultimately, the Court finds that Moore's condition, considered alone or in combination with any other circumstances raised in his prior motion, does not amount to an extraordinary and compelling reason warranting early release. If his circumstances drastically change and Moore can show his condition is terminal *despite* his reasonable medical efforts, the Court will take another look at Moore's request.

Finally, and in spite of the above analysis, the Court would note that the 18 U.S.C.

§ 3553(a) factors weigh against any further reduction at this time.[5] Moore's conduct in this case shows that he is a pernicious danger to children. Moore possessed child pornography, engaged in online chats about sexually abusing and killing minor children, solicited a person he believed to be a 15-year-old girl to send him nude images and engage in sexual contact with him, and traveled for the purpose of engaging in sexual contact with someone he believed to be a minor.

For these reasons, the Court feels society is best protected by Moore's continued incarceration at this time, and further, that a reduction in Moore's sentence would not be consistent with the relevant § 3553(a) factors.

## V. CONCLUSION

Moore exhausted his administrative remedies. That said, he has failed to demonstrate an "extraordinary and compelling reason" for his release and has failed to show that a reduction in his sentence is consistent with the goals of the 18 U.S.C. § 3553(a) sentencing factors. Weighing all relevant factors, the Court cannot depart from its prior

---

[5] This code section provides:

> Factors To Be Considered in Imposing a Sentence.—The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—[. . .]
>
> (2) the need for the sentence imposed—
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . .

18 U.S.C. § 3553(a).

sentence at this time. Accordingly, Moore's Motion for Compassionate Release is DENIED.

## VI. ORDER

The Court **HEREBY ORDERS**:

1. Moore's Motion for Compassionate Release (Dkt. 34) is **DENIED**.

DATED: April 2, 2025

David C. Nye
Chief U.S. District Court Judge